In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor, the United New Jersey Railroad and Canal Company, Beech Creek Railroad Company, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, the Cleveland & Pittsburgh Railroad Company, the Connecting Railway Company, the Delaware Railroad Company, Erie and Pittsburgh Railroad Company, the Michigan Central Railroad, the Northern Central Railway Company, Penndel Company, the Philadelphia, Baltimore & Washington Railroad Company, the Philadelphia & Trenton Railroad Company, the Pittsburgh, Youngstown and Ashtabula Railway Company, Pittsburgh, Fort Wayne and Chicago Railway Company, Union Railroad Company of Baltimore, Secondary Debtors.

No. 70–347.

United States District Court,
E. D. Pennsylvania.

Nov. 22, 1978.

James E. Howard, Philadelphia, Pa., Philip Stansbury, J. Michael Hemmer, Washington, D. C., for Penn Central Trustees.

Laurence Z. Shiekman, Philadelphia, Pa., for Consolidated Rail Corp.

Vincent Hatton, Philadelphia, Pa., for Schedule A Indenture Trustees.

Richard G. Elliott, Jr., Wilmington, Del., for Wilmington Trust Co., Indenture Trustee.

Emil T. Bayko, Lance D. Myers, New York City, for Bankers Trust Company, as Indenture Trustee.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

On October 24, 1978, the Penn Central Reorganization Plan was consummated, and the reorganized company, Penn Central Corporation, came into existence. Pursuant to the Consummation Order, the distributions contemplated by the Plan are being carried out; that is, interests in and claims against the bankrupt estate, and the securities representing those claims and interests, are being exchanged for the cash and securities of Penn Central Corporation which the Plan provides.

The Indenture Trustees of six mortgage indentures have appealed from the Approval and Consummation Orders, seeking to obtain, on behalf of their bondholders, somewhat greater distributions than the Plan contemplates. The appeals were argued on October 18, 1978. Both the Court of Appeals and the United States Supreme Court have declined to stay consummation.

In the Consummation Order, this Court reserved jurisdiction to require the allocation of cash, the issuance of additional securities, or both, if that should prove necessary under any appellate mandate which may hereafter be issued. It is clear that the appellate relief being sought by the Indenture Trustees, while it could, if fully granted, require the issuance of as much as $46 million in additional A Bonds (and thus significantly alter the timetable for proposed early redemption of A Bonds), would not impair the feasibility of the Plan. The pending appeals therefore do not pose any obstacle to the distribution of cash and securities to all of the parties who have not appealed.

The issue now before the Court relates to whether the distributions contemplated by the Plan should go forward at this time with respect to the bondholders whose Indenture Trustees have appealed. Since most of the appeals seek only additional cash or A Bonds in lieu of junior securities, it would be possible to make partial distributions at this time. Whatever the outcome of the appeals, a later distribution to these bondholders would then be necessary. But this would be an expensive and potentially confusing procedure. Since there is no reason to expect that the appellate process will be unduly protracted, and since the cash portion of any distributions to which these bondholders are entitled will be earning interest, for the benefit of the distribu-

tees, during the interim, I discern no unfairness in postponing all distributions to the affected bondholders for a further brief period.[1]

Deferral of distribution to these bondholders does, however, present a further problem. The Plan contemplates the issuance of approximately $360 million in A Bonds. Under the terms of the Plan and the Consummation Order, and the A Bond Indenture executed pursuant thereto, by-lot redemptions of A Bonds, for cash, are to be made each year, commencing in 1978. The funds used for these redemptions are to be obtained from the ongoing program of liquidating assets not essential to the business operations of Penn Central Corporation (the "Asset Disposition Program"). If the projections embodied in the Plan are realized, and if no additional A Bonds are required to be issued as a result of the appeals, substantially all of the A Bonds would be redeemed in cash by 1983. In order to comply with the terms of the A Bond Indenture, Penn Central Corporation must now determine the amount of cash available for the initial redemption, and the A Bond Indenture Trustee must, promptly thereafter, choose by-lot the A Bonds which are to be redeemed by December 31, 1978.

The precise issue now before the Court is whether these redemptions by-lot should be made from the pool of A Bonds contemplated by the Plan, or whether some arrangements should be made in order to ensure that, if the appeals are successful and result in a determination that the appellant bondholders are entitled to additional A Bonds, these additional A Bonds will have been permitted to participate in the 1978 redemption by-lot. If the pool of A Bonds from which these redemptions are to occur were to be increased by adding a sufficient quantity of A Bonds to accommodate possibly successful appeals, and it should later develop that some or all of these additional A Bonds are never issued, the redemption rights of the holders of A Bonds will have been unjustifiably deferred. Indeed, some unjustifiable deferral would be inevitable, unless the appellants are totally successful—a circumstance which, naturally enough, I regard as unlikely.

If the pool of A Bonds eligible for 1978 redemption is limited to the A Bonds provided for in the Plan, any unused cash set aside for such redemptions will be available for the next redemptions, in late 1979.[2] If the appeals are partially or wholly successful, and additional A Bonds are required to be issued, the holders of these additional A Bonds will have been deprived of the right to participate in the 1978 redemptions, and it is at least arguable that this differential treatment is not permissible.

Some of the Indenture Trustees have proposed a rather elaborate mechanism for solving this puzzle. They propose that two lotteries should now occur: first, by-lot selections would be made from a pool which includes all of the additional A Bonds which might be issued if the appeals are successful; if any of the hypothetical additional A Bonds are selected for redemption, a like number of A Bonds would be selected by-lot from a pool containing only the original, Plan-contemplated, A Bonds; actual cash redemptions in such situations would then be deferred until completion of the appeals, and would be governed by the outcome of the appeals. There are, however, serious

---

1. At the hearing, it was made to appear that the existing securities may properly be traded in the interim. It would certainly seem that the values assigned by the marketplace to the new securities of Penn Central Corporation would be readily translatable into corresponding values of the existing securities which will soon be exchanged for them. The suggestion that some slight discount might be involved because the bonds have not yet been exchanged, I regard as speculative; in any event, it can scarcely be seriously argued that the decision to appeal was made on the assumption that the pendency of the appeals would have no effect on the timing of the distributions under the Plan. Whatever slight potential detriment is involved is not, in my judgment, justification for exposing the reorganization process to the risk of two separate distributions to the same bondholders.

2. If A Bonds selected for redemption in 1978 are not issued by November 15, 1979, the money set aside to redeem such unissued A Bonds will be available for the 1979 redemption.

flaws in that approach. In the first place, I very much doubt that it would be feasible to accommodate all of the various possible appeal results. In the second place, it would be extremely cumbersome, expensive, and confusing. Finally, and most importantly, it would impose an unfair burden upon at least some non-appealing bondholders, which would be attributable solely to the pendency of appeals by others; burdens which would be appropriate only in the event the appeals are totally successful.

I have concluded that the 1978 redemption pool should include only those A Bonds contemplated for issuance under the Plan as it now stands. If additional A Bonds are required to be issued, it will be time enough then to decide whether the holders of such additional A Bonds should be accorded the equivalent of participation in the 1978 redemptions. I believe it would be a relatively simple matter, if necessary, to permit at that time the redemption of an appropriate percentage of the additional bonds. Authority to accomplish this is reserved in paragraph 7.07(a) of the Consummation Order.

AND NOW, this 22nd day of November, 1978, it is ORDERED that:

1. The additional principal amount of bonds for the purpose of clause (y) in Section 3.03 of the Indenture of Mortgage and Deed of Trust Securing the Series A General Mortgage Bonds is zero.

2. The postponement of distribution to all bondholders of a series or issue for which an appeal by an Indenture Trustee is pending shall be, in conformity with the reservation expressed in paragraph 7.07(d) of the Consummation Order, extended until January 31, 1979, pending further Order of this Court.

3. In exercise of the power specified in Section 5.02 of the Indenture of Mortgage and Deed of Trust Securing the Series A General Mortgage Bonds, the notice period therein referred to is shortened to fifteen (15) days.